UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-149-R

WARREN PAVING, INC., *et al*,                                              Plaintiffs

v.

HEARTLAND MATERIALS, INC., *et al*,                                    Defendants

## MEMORANDUM OPINION

This matter is before the Court on two pending motions. First, Defendants Heartland Materials, Inc., Southern Aggregate Distributors, Inc., and William R. Frazer LLC have filed a Motion to Dismiss. (Docket No. 7). Plaintiffs Slats Lucas, LLC, and Warren Paving, Inc. have responded, (Docket No. 8), and Defendants have replied, (Docket No. 9). Second, Plaintiffs filed a Motion to Deposit Funds. (Docket No. 10). Defendants have responded, (Docket No. 11), and Plaintiffs have replied, (Docket No. 12). These matters are now ripe for adjudication. For the following reasons, the Court will **GRANT** Defendants' Motion to Dismiss and **DENY** Plaintiffs' Motion to Deposit Funds.

## BACKGROUND

Plaintiff Warren Paving, Inc. ("Warren Paving") began investigating opportunities to own and operate a limestone quarry in 2003. Lawrence Warren, on behalf of Warren Paving, engaged a geologist, Walt Gaylord, to investigate the quality and quantity of limestone reserves at a quarry for sale in Illinois. Subsequently, Gaylord, who was a principal in Heartland Materials, Inc. ("Heartland"), represented that he knew of potential locations in Kentucky. Heartland then began assisting Warren Paving in this search, first identifying a potential tract called "Paddy's Bluff" that Warren Paving declined to purchase because it would require underground mining.

1

Heartland held an option to purchase Paddy's Bluff. Later, Heartland identified a tract of land for purchase in Livingston County, Kentucky ("the Property"). After data gathered by Gaylord indicated the Property was a good location for a limestone quarry, Warren Paving told Heartland it would like to purchase an option to buy the Property. Warren Paving gave Heartland a $5,000 check to purchase the option, however Heartland purchased the option in its own name without informing Warren Paving. When the option was about to expire, Warren Paving gave Heartland another check for $5,000 to extend the option; Heartland did so, again in its own name.

Warren Paving decided to exercise its option to purchase the property, and Heartland presented it with a "Contract for the Assignment of an Option to Purchase Real Property with Retained Royalties" (the "Contract for Assignment") which showed that the option was in Heartland's name. The Contract for Assignment was dated September 1, 2004. Heartland transferred its option to Warren Paving in exchange for Warren Paving's agreement to advance $300,000 to Heartland to be recouped by the first 75,000 tons of limestone produced on the property. Further, another $300,000 advance was to be paid to Heartland to be recouped over the next 750,000 tons. After production of the first 1,500,000 tons of limestone, Warren Paving was to pay Heartland royalties of $0.40 per ton for all limestone mined and loaded for transport.

Warren Paving states that "[d]espite Heartland's actions, however, because Warren Paving believed a successful limestone quarry could be operated on the Property, even with Heartland's exorbitant demands, Warren Paving executed the Contract for Assignment so it could purchase the Property from Mr. and Mrs. Grabowski." (Docket No. 1). Before production began, Heartland got certain required permits and other approvals for Warren Paving. On June 4, 2007, Warren Paving transferred the Property to Slats Lucas. On July 1, 2007, Warren Paving and Slats Lucas entered into a lease under which, among other things, Warren Paving agreed to

2

make the payments on behalf of Slats Lucas. In July of 2009, Heartland assigned a 1/3 undivided interest in its right to the purported royalties to Gaylord. Subsequently, in July of 2009, Gaylord relinquished his interest in the purported royalty to Slats Lucas. In August of 2010, in consideration for the payment of one dollar, Heartland assigned half of its remaining 2/3 interest in its right to the royalties to WRF and half to Southern Aggregate. Currently, WRF and Southern Aggregate each have a 1/3 interest in the right to the purported royalties.

Further, Warren Paving alleges that "[a]t all times relevant hereto, neither Heartland nor any of its officers were licensed real estate brokers registered with the Kentucky Real Estate Commission." *Id.* Warren Paving brought this lawsuit seeking a declaratory judgment that Heartland was prohibited from practicing real estate and thus that the Contract for Assignment is void and Defendants are not entitled to any payments. Further, Warren Paving brings claims of Mistake of Fact, Breach of Fiduciary Duties, Fraud and Intentional Misrepresentation, Restitution, and Assumpsit/Unjust Enrichment/Constructive Trust.

## STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency, Inc.*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept

unwarranted factual inferences." *Id*. (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id*. at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*.

Although Rule 12(b) does not specifically address motions to dismiss based on the alleged expiration of the applicable statute of limitations, a complaint that shows on its face that relief is barred by the affirmative defense of the statute of limitations is properly subject to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *City of Painesville, Ohio v. First Montauk Fin. Corp.*, 178 F.R.D. 180, 193 (N.D.Ohio 1998). A statute of limitations defense essentially signifies that the face of the complaint contains an insurmountable bar to relief, indicating that the plaintiff has no claim. S*ee Ashiegbu v.*

*Purviance*, 76 F.Supp.2d 824, 828 (S.D. Ohio 1998) (*citing Rauch v. Day & Night Mfg.*, 576 F.2d 697, 702 (6th Cir. 1978)).

**DISCUSSION**

Declaratory Judgment (Count I)

Warren Paving argues that because Heartland did not have a real estate license, it was prohibited from practicing real estate. Thus, they argue, the Contract for Assignment is void and Defendants are not entitled to any payments under it. Defendants argue that Heartland was not required under Kentucky law to hold a real estate broker's license, and that even if it had been required to hold a license, the claim is barred by the statute of limitations notwithstanding Plaintiffs' argument that they first learned of this fact in 2014.

Requirements for real estate broker's licenses arise from KRS § 324.020, which states that:

> It shall be unlawful for any person who is not licensed as a real estate broker or sales associate to hold himself or herself out to the public as a real estate broker or sales associate or use any terms, titles, or abbreviations which express, infer, or imply that the person is licensed as a real estate broker or sales associate.

KRS § 324.020. Further, "[n]o person shall practice real estate brokerage with respect to real estate located in this state unless: (a) The person holds a license to practice real estate brokerage under this chapter; or (b) The person has complied with KRS § 324.235 to 324.238." *Id.* Real estate brokerage is defined as "a single, multiple, or continuing act of dealing in time shares or options, selling or offering for sale, buying or offering to buy, negotiating the purchase, sale, or exchange of real estate, engaging in property management, leasing or offering to lease, renting or offering for rent, or referring or offering to refer for the purpose of securing prospects, any real

estate or the improvements thereon for others for a fee, compensation, or other valuable consideration . . . ." KRS § 324.010.

Finally, KRS § 324.030 states exceptions to this rule for "[a]ny person who as owner or lessor performs any of the acts defined in KRS § 324.010 with reference to property owned or leased by him or to his regular employees, with respect to the property so owned or leased, if the acts are performed in the regular course of, or as an incident to, the management of the property and the investment in it." KRS § 324.030.

Defendants argue that this claim is barred by the statute of limitations, stating that the applicable statute of limitations is found in KRS § 413.120(2) which states:

> The following actions shall be commenced within five (5) years after the cause of action accrued: . . .
> (2) An action upon a liability created by statute, when no other time is fixed by the statute creating the liability.

KRS 413.120(2). Defendants argue that liability is based on the alleged violation of a statute, and because KRS § 324.020 does not contain its own statute of limitations, the five year limitations period should apply. Plaintiffs respond first that the contract is void *ab initio* and subject to attack at any time. However, the cases cited by Plaintiffs are not applicable to the instant set of facts, where a party seeks to bring a claim outside the statute of limitations. For example, *Liter v. Ford*, 258 S.W. 110 (Ky. App. 1924), involved the requirements of a sheriff's sale in order to convey valid title to a purchaser. *See United States v. 14.99 Acres, More or* Less, 27 F. Supp. 843, 844 (W.D. Ky. 1939). Here, the statute provides not for the recession of contracts created by unlicensed parties, but states that "[t]he Kentucky Real Estate Commission may seek and obtain injunctive relief against any individual acting in violation of this chapter by filing a civil action in the Circuit Court where the commission is located or where the unlawful activity took place." KRS § 324.020(6).

6

In the alternative, Plaintiffs argue that the proper statute of limitations is the fifteen-year period for "[a]n action upon a . . . written contract." KRS § 413.090. However, Plaintiffs are suing based on a statutory violation, Heartland's failure to possess a real estate license. Without ruling on whether the statute was violated in this case, the proper statute of limitations to apply is KRS § 413.120(2). Because the Plaintiffs waited more than five years to bring this claim, it is barred by the statute of limitations.

Mistake of Fact (Count II)

Plaintiffs allege that "[i]n executing the Contract for Assignment, Warren Paving mistakenly believed Heartland had the authority and proper licensing in Kentucky to engage in real estate brokerage." (Docket No. 1). Defendants argue that this claim is barred by the statute of limitations.

The statute of limitations for claims based upon "mistake" is governed by KRS § 413.120(12), which states that "actions must be commenced within five (5) years after they accrue." KRS § 413.120(12). KRS § 413.130(3) applies the discovery rule to mistake actions and states that such actions "shall not be deemed to have accrued until the discovery of the mistake." KRS § 413.130(3). To invoke the discovery rule, a plaintiff must allege "that the mistake was not only discovered (after the expiration of the five-year statute of limitations), but that the mistake could not have been sooner discovered by the exercise of reasonable diligence on his part." *Gragg v. Levi*, 208 S.W. 813-814 (Ky. 1919).

Here, Plaintiffs have not explained why, with exercise of reasonable diligence, they did not discover that Heartland was not in possession of a real estate license for nearly ten years. There was no allegation presented in the Complaint that Heartland actively hid this fact, nor any

indication that Plaintiffs made an attempt to discover Heartland's licensing status, despite this being a matter of public record. Thus, this claim is barred by the statute of limitations.

<u>Breach of Fiduciary Duties (Count III) & Fraud and Misrepresentation (Count IV)</u>

Plaintiffs allege that Heartland "omitted material facts relating to Heartland's intent to purchase the option in Heartland's own name." (Docket No. 1). Further, Plaintiffs allege that Heartland breached its fiduciary duty to Warren Paving by "(1) purchasing an option to buy the Property while representing Warren Paving in its efforts to examine and potentially purchase the Property; (2) requiring Warren Paving to agree to substantial payments to Heartland under the Contract for Assignment in return for the option; (3) accepting payments under the Contract for Assignment for its self dealing; and (4) assigning the Contract for Assignment and causing Plaintiffs to continue making payments to other parties as a result of its self dealing." *Id.*

Defendants argue that these claims are also barred by the statute of limitations, and that Plaintiffs waived any claim they might have had by electing to proceed with the contract and performing it for many years. (Docket No. 7). In response, Plaintiffs argue that the continuing torts doctrine applies to toll the applicable statute of limitations, because of Warren Pavings's recurring payment obligations under the fraudulently induced contract. Further, they argue that under Kentucky law, a plaintiff may still maintain a fraud action even though he completes the contract.

KRS § 413.120(12) provides the applicable statute of limitations. "The following actions shall be commenced within five (5) years after the cause of action accrued: . . . (12) An action for relief or damages on the ground of fraud or mistake." KRS § 413.120(12). This is supplemented by the "discovery rule" in KRS § 413.130(3), which states that, "[i]n an action for relief or damages for fraud or mistake, referred to in subsection (12) of KRS § 413.120, the cause

8

of action shall not be deemed to have accrued until the discovery of the fraud or mistake. However, the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud." KRS § 413.130(3).

In addition, KRS § 413.120(7) provides the applicable statute of limitations for the breach of fiduciary duty claim. "The following actions shall be commenced within five (5) years after the cause of action accrued: . . . (7) An action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated . . . ." KRS § 413.120(7).

Plaintiffs argue that the Kentucky Supreme Court has held that a plaintiff "will not be precluded from maintaining an action for damages for the fraud, even though he goes ahead and completes his contract." *Sanford Const. Co. v. S & H Contractors, Inc*., 443 S.W. 2d 227, 236 (Ky. 1969). "[A]ffirmance or continued performance by the defrauded party under the contract also effectively waives the right to damages," however an exception exists "if recision of the executory contract by the defrauded party would result in damages clearly in excess of those generated by continued performance." *Hopkins v. Performance Tire & Auto Serv. Center, 866 S.W.2d 438, 440-41* (Ky. Ct. App.1993).  However, these cases involve the waiver of contract claims caused by a plaintiff continuing to perform under the contract, not the issue of resuscitating claims barred by the statute of limitations. Further, *Dunn v. Tate*, 268 S.W.2d 925 (Ky. 1954), cited by the Plaintiffs, did not involve a fraud claim that exceeded the statute of limitations. Rather, defendants in *Dunn* merely argued that the plaintiff was prevented from maintaining his fraud claim because he had completed obligations under the contract. *Id.* Further, none of the cases cited by the Plaintiff in regards to the fiduciary duty claim involve tolling the statute of limitations in a similar claim.

9

Plaintiffs became aware of the fact that Heartland purchased the option in its name on September 1, 2004, when Warren Paving was presented with, and signed, the Contract for Assignment. Thus, these claims are barred by the statute of limitations.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss, (Docket No. 7), is **GRANTED** and Plaintiffs' Motion to Deposit Funds, (Docket No. 10), is **DENIED** as moot. An appropriate Judgment will issue concurrently with this Opinion.